# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Robert Potthoff, individually and on behalf of all others similarly situated, | 1:22-cv-01722 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Bob's Discount Furniture, LLC, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.  Bob's Discount Furniture, LLC ("Defendant") markets, promotes, and sells "service contracts" referred to as "Goof Proof" in connection with its sale of furniture ("Product").

2.  Defendant describes Goof Proof as "the best way to protect your investment from a wide variety of accidents for 5 years."

3.  An accident is something that is unexpected and unintended, happening by chance.

4.  Protection against accidents is the function of insurance, subject to extensive regulations.

5.  Goof Proof is self-classified as a service contract or extended warranty, which purports to exist between insurance and a regular warranty.

6.  Service contracts are subject to abuse, due to light regulation, which is why they pay between four and fifteen cents per dollar to cover claims, with the rest profit.

7.  A service contract is defined as an agreement "to perform the repair, replacement, or maintenance…of any [] consumer product in connection with the operational or structural failure due to a defect in materials or workmanship, or normal wear and tear." 215 ILCS 152/5.

8.    An example of a service contract is where an automobile manufacturer agrees to repair or replace certain parts on a car it manufactured and sold, should they fail or break down within a specified period, i.e., 5 years or 50,000 miles.

9.    However, unlike a service contract, Goof Proof excludes coverage related to "operational or structural failure due to a defect in materials or workmanship, or normal wear and tear."

10.    Plaintiff purchased a couch-reclining chair combo from Defendant and bought the added Goof Proof coverage.

11.    Plaintiff submitted a claim under Goof Proof when the chair broke while he was getting up from it.

12.    The claim was denied on the basis that the damage caused was due to the normal or intended use of the reclining chair.

13.    This is equivalent to a "wear and tear" exclusion in most insurance policies.

14.    The purpose of a wear and tear clause is to let the covered party know that the agreement will not provide coverage for things that reach their natural life span.

15.    The key component of any recliner is the metal activating mechanism made of stamped steel, attached to the chair's frame, containing nuts, bolts, and springs.



16.    The cause of Plaintiff's damage was not due to the item's intended use, but because the nuts and bolts on the recliner never properly fit the metal mechanism, which produced gradual weakening and loosening.

17.    The springs, which cause the chair to recline and return to its upright position, were defectively designed with bends too close to their edges, causing them to prematurely fail after less than two years.

18.    The breakdown of the components within two years was a fortuitous, unexpected, and unintended event, not consistent with the intended use of the item.

19.    Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product or service, relative to itself and other comparable products or alternatives.

20.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

21.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

22.     Had Plaintiff known the truth, he would not have bought the Product or would have paid less for it.

Jurisdiction and Venue

23.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

24.     The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

25.     Plaintiff Robert Potthoff is a citizen of Illinois.

26.     Defendant Bob's Discount Furniture, LLC is a Delaware limited liability company with a principal place of business in Manchester, Fairfield County, Connecticut. and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

27.     The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

28.     The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, with the representations described here, at dozens of stores in the states covered by Plaintiff's proposed classes.

29.     Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Kendall County, including Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

<u>Parties</u>

30.     Plaintiff Robert Potthoff is a citizen of Montgomery, Kendall County, Illinois.

31.     Plaintiff purchased a couch which contains a reclining chair known as the Walker-LAF PWRC/ARLS REC/CSL/RAF PW CHS for $1,999.00 and Goof Proof for $249.99, within the statutes of limitations for each cause of action alleged, at Bob's Discount Furniture, 545 S Route 59, Aurora IL 60504 on March 21, 2020.

32.     During the sales process, a representative of Defendant offered the Goof Proof plan as an additional purchase.

33.     Plaintiff asked three times what the Goof Proof plan would cover and was told it would cover any issues which come up for five years and relied on this representation in purchasing it.

34.     Plaintiff believed and expected Goof Proof would provide protection of one's purchase from accidental damage through repair, replacement, or maintenance, with assurances by sales representatives that Goof Proof would cover virtually anything that went wrong with the covered item because that is what the representations and omissions said and implied.

35.     Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

36.     In or around February or March 2022, the reclining chair part of the couch broke when Plaintiff was getting up from it.



37.    Plaintiff submitted a claim under the Goof Proof plan and after several weeks, was denied coverage.

38.    The reason provided was that getting up from the chair was considered normal use and the intended use of the furniture and not an accidental occurrence.

39.    The cause of Plaintiff's damage was not due to the item's intended use, but because the nuts and bolts on the recliner never properly fit the metal mechanism, which produced gradual weakening and loosening.

40.    The springs, which cause the chair to recline and return to its upright position, were defectively designed with bends too close to their edges, causing them to prematurely fail after less than two years.

41. The breakdown of the components within two years was a fortuitous, unexpected, and unintended event, not consistent with the intended use of the item.

42. Defendant Bob's Discount Furniture, LLC is a Delaware limited liability company with a principal place of business in Manchester, Connecticut, Fairfield County.

43. Bob's is one of the fastest growing furniture chains in the nation.

44. This is due to its promise of quality items at fair prices.

45. However, Bob's makes most of its profits not through furniture, but through sale of the Goof Proof plans.

46. Defendant's sales personnel receive bonuses for the number of Goof Proof plans sold and are rewarded and penalized based on their success.

47. This creates an incentive to give consistently false assurances about the coverage provided.

48. Plaintiff bought the Product at or exceeding the above-referenced price.

49. Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

50. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

51. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

52. Plaintiff intends to, seeks to, and would purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

53.    Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar furniture which was assured to be repaired if anything happened, because he is unsure whether those representations are truthful.

Class Allegations

54.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, Iowa, Wyoming, Texas, South Dakota, West Virginia, Utah, Idaho, Alaska, and Montana who purchased the Product during the statutes of limitations for each cause of action alleged.

55.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

56.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

57.    Plaintiff is an adequate representative because his interests do not conflict with other members.

58.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

59.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

60.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

61.    Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

62.    Plaintiff incorporates by reference all preceding paragraphs.

63.    Plaintiff believed the Product would provide protection of one's purchase from accidental damage through repair, replacement, or maintenance, with assurances by sales representatives that Goof Proof would cover virtually anything that went wrong with the covered item.

64.    Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

65.    Defendant misrepresented the Product through oral and written statements, omissions, ambiguities, half-truths and/or actions.

66.    Plaintiff relied on the representations and omissions to believe the Product would provide protection of one's purchase from accidental damage through repair, replacement, or maintenance, with assurances by sales representatives that Goof Proof would cover virtually anything that went wrong with the covered item.

67.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

68.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or

deceptive business practices in the conduct of commerce.

69.     The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

70.     Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

71.     As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

72.     Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

73.     The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it would provide protection of one's purchase from accidental damage through repair, replacement, or maintenance, with assurances by sales representatives that Goof Proof would cover virtually anything that went wrong with the covered item.

74.     The Magnuson Moss Warranty Act includes specific requirements for service contracts, which Defendant violated.

75.     Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the tags and packaging, in print circulars, direct mail, and targeted digital advertising.

76.     Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

77. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it would provide protection of one's purchase from accidental damage through repair, replacement, or maintenance, with assurances by sales representatives that Goof Proof would cover virtually anything that went wrong with the covered item.

78. Defendant's representations affirmed and promised that the Product would provide protection of one's purchase from accidental damage through repair, replacement, or maintenance, with assurances by sales representatives that Goof Proof would cover virtually anything that went wrong with the covered item.

79. Defendant described the Product so Plaintiff believed it would provide protection of one's purchase from accidental damage through repair, replacement, or maintenance, with assurances by sales representatives that Goof Proof would cover virtually anything that went wrong with the covered item, which became part of the basis of the bargain that it would conform to its affirmations and promises.

80. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

81. This duty is based on Defendant's outsized role in the market for this type of Product, one of the nation's largest furniture companies, offering quality at affordable prices.

82. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

83. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

84. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

85. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

86. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

87. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it would provide protection of one's purchase from accidental damage through repair, replacement, or maintenance, with assurances by sales representatives that Goof Proof would cover virtually anything that went wrong with the covered item.

88. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it would provide protection of one's purchase from accidental damage through repair, replacement, or maintenance, with assurances by sales representatives that Goof Proof would cover virtually anything that went wrong with the covered item, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

89. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

90. Defendant had a duty to truthfully represent the Product, which it breached.

91. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, one of the nation's largest furniture

12

companies, offering quality at affordable prices.

92.    Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

93.    These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

94.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

95.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

96.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breach of Contract</u>

97.    Plaintiff entered into a contract with Defendant for purchase of the Product.

98.    The terms of the contract provided that the Product would provide protection of one's purchase from accidental damage through repair, replacement, or maintenance, with assurances by sales representatives that Goof Proof would cover virtually anything that went wrong with the covered item.

99.    Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

100.    Plaintiff was damaged by the breach, and those damages include the purchase price.

<u>Fraud</u>

101.    Defendant misrepresented and/or omitted the attributes and qualities of the Product,

that it would provide protection of one's purchase from accidental damage through repair, replacement, or maintenance, with assurances by sales representatives that Goof Proof would cover virtually anything that went wrong with the covered item.

102. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

103. Defendant knew of the issues described here yet did not address them.

104. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

105. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory

claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   April 4, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com